1
2
3
4                    UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6
7    CHOUNG WOONG AHN, et al.,              Case No.  20-cv-02604-JD
8                 Plaintiffs,
                                            **ORDER RE TRO**
9          v.
                                            Re: Dkt. No. 7
10   WILLIAM P. BARR, et al.,
11                Defendants.

12        The three petitioners in this case, Choung Woong Ahn, Salvador Moncada Hernandez and

13   Yao Xeng Saeturn, are in the custody of Immigration and Customs Enforcement ("ICE") at the

14   Mesa Verde ICE Processing Facility.  Dkt. No. 1 ¶ 2.  They seek a writ of habeas corpus ordering

15   release under 28 U.S.C. § 2241 on the contention that their custody violates the Due Process

16   Clause of the Fifth Amendment.  Petitioners allege that their continued civil immigration detention

17   amounts to an unconstitutional "punishment" because they are medically vulnerable to COVID-19

18   infection and are exposed to undue risks at the Mesa Verde facility.  *Id*. ¶¶ 55-56.

19        This order resolves petitioners' application for a temporary restraining order, which they

20   filed shortly after the habeas petition.  Petitioners ask to be released pending disposition of the

21   petition "in light of the current punitive nature of their confinement during this rapidly escalating

22   public health crisis."  Dkt. No. 7 at ECF p. 2.  The TRO is denied without prejudice.

23                                   **LEGAL STANDARDS**

24        This is a noticed and opposed application for a TRO.  The government was served with the

25   application and has filed an opposition.  Dkt. No. 15.  Consequently, the TRO request is subject to

26   the same standards that apply to a preliminary injunction motion.  *Fang v. Merrill Lynch, Pierce,*

27   *Fenner & Smith, Inc.*, No. 16-cv-06071-JD, 2016 WL 9275454, at *1 (N.D. Cal. Nov. 10, 2016),

28   *aff'd*, 694 F. App'x 561 (9th Cir. 2017).

*United States District Court*
*Northern District of California*

Preliminary injunctions are "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'") (citation omitted and emphasis in original). "A plaintiff seeking a preliminary injunction must establish that he [or she] is likely to succeed on the merits, that he [or she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his [or her] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *see also Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (same). In our circuit, a plaintiff may also obtain a preliminary injunction under a "sliding scale" approach by raising "serious questions" going to the merits of plaintiff's claims and showing that the balance of hardships tips "sharply" in plaintiff's favor. *A Women's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018); *Vanguard Outdoor LLC v. City of Los Angeles*, 648 F.3d 737, 740 (9th Cir. 2011). But "at an irreducible minimum," the party seeking the injunction "must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." *Airbnb, Inc. v. City and County of San Francisco*, 217 F. Supp. 3d 1066, 1072 (N.D. Cal. 2016) (citation omitted); *see also Garcia*, 786 F.3d at 740 (likelihood of success on the merits is "the most important" factor, and a failure to show that likelihood relieves any need to consider the remaining *Winter* elements).

Petitioners' burden is "doubly demanding" because they seek a mandatory injunction, and so "must establish that the law and facts clearly favor [their] position, not simply that [they are] likely to succeed." *Garcia*, 786 F.3d at 740. This higher standard applies because petitioners have asked for affirmative action in the form of immediate release from ICE custody. An order requiring a responsible party to "take action" is treated as a mandatory injunction. *Id.* Such an injunction "goes well beyond simply maintaining the status quo pendente lite [and] is particularly disfavored," and the "district court should deny such relief 'unless the facts and law clearly favor the moving party.'" *Id.* (internal quotations omitted). Our circuit holds that in "doubtful cases," a mandatory injunction should not issue. *Id.*

**DISCUSSION**

As an initial matter, the Court denies the government's objection to venue.  Dkt. No. 15 at 13-15.  Petitioners allege that their legal custodian, the Acting Field Director of the San Francisco ICE Field Office, is found in this district, and that it is the San Francisco Field Office that "is responsible for carrying out ICE's immigration detention operations at Mesa Verde."  Dkt. No. 1 ¶ 17.  Any relief ordered by the Court would be directed to the San Francisco ICE Field Office.  Venue in this district is proper.  *See Masood v. Barr*, No. 19-cv-07623-JD, 2020 WL 95633, at *2 (N.D. Cal. Jan. 8, 2020).

The government's challenge to Article III standing is also not well taken.  Dkt. No. 15 at 15-18.  The contention that "[s]ome of the conditions alleged, especially if treated and/or controlled, do not render them at high risk for COVID-19" goes to the merits of petitioners' claims, not to whether they have alleged a sufficiently concrete and particularized injury for which the Court can grant relief.  There is no credible doubt that the standing allegations are adequate.  Petitioners say that "Ahn is 74 years old and has diabetes, coronary artery disease and lung cancer," "Moncada has chronic liver disease," and "Saeturn is 65 and has hypertension and cerebrovascular disease."  Dkt. No. 1 ¶ 2.  They allege that they cannot "protect themselves against COVID-19 infection" by practicing social distancing and other preventative measures at the Mesa Verde facility, and that "[e]ach plaintiff suffers an underlying health condition that makes him particularly vulnerable to severe and rapidly progressing effects of COVID-19, including death."  *Id.* ¶ 2.

The government also suggests that redressability for Article III purposes is questionable because petitioners, by virtue of being in custody, "actually have greater access to medical care than many in the general public."  Dkt. No. 15 at 18.  That proposition is no bar to standing.  Petitioners have alleged that "immigration detention facilities have a heightened risk of infectious spread" due to factors such as "crowding [and] deficient hygiene and sanitation," and that "[p]eople live in close quarters and are unable to maintain the recommended distance of six feet from others; there is often insufficient capacity for isolation of potentially or actually infected people; people share or touch objects used by others; toilets, sinks, and showers are shared,

3

without disinfection between each use; food preparation and service is communal with little opportunity for surface disinfection; and detainees and staff come and go frequently." Dkt. No. 1 ¶ 26. An order of release would relieve petitioners of those circumstances, which satisfies the redressability element of Article III standing. And petitioners may properly seek this relief under 28 U.S.C. § 2241. *See Workman v. Mitchell*, 502 F.2d 1201, 1208 n.9 (9th Cir. 1974) ("federal habeas corpus actions are now available to deal with questions concerning both the duration and the conditions of confinement").

But standing allegations are no substitute for adducing facts to show that petitioners are entitled to the extraordinary relief they seek. The record as it currently stands does not demonstrate that the "facts clearly favor" a mandatory injunction. *Garcia*, 786 F.3d at 740. This is true even under the relaxed evidentiary rules that apply to injunction proceedings, which the government acknowledges are appropriate here. *See* Dkt. No. 15 at 8 (citing *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988), and *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984)).

To start, there is not a single declaration from any of the petitioners themselves, and mainly just declarations from their counsel based on what petitioners said to them. This is a surprising lacuna in the record because counsel did not aver or argue that they did not have reasonable access to their clients when preparing the TRO application. The absence of any evidence directly from petitioners is not necessarily fatal for the application, but it certainly weakens its punch.

The lawyers' declarations are also thin on the facts and unduly vague. For example, counsel's declaration for Ahn is equivocal even about basic facts like his age and country of origin. Dkt. No. 1-4 ¶ 3 ("On information and belief, Mr. Ahn is 74 years old. The Department of Homeland Security alleges that he is a national of South Korea."). The declaration contains additional statements that undermine the reliability of counsel's averments about Ahn, such as that "Mr. Ahn speaks limited English" and so communication was through a "professional telephonic interpretation service." *Id*. ¶ 2. For petitioner Saeturn, counsel's declaration similarly states "[o]n information and belief, he is a national of Laos," and that he not only "speaks limited English" but

4

is "also hard of hearing." *Id*. ¶¶ 15-16.  While the declaration states a telephonic interpretation service was used for Saeturn as well, it does not address any measures taken to address his challenged hearing.  A declaration by Moncada's sister focuses solely on his mental health issues, Dkt. No. 1-5, which do not appear to be the basis of any claimed special vulnerability to COVID-19.

The lack of meaningful medical evidence for petitioners is also striking.  The declaration submitted by Dr. Samuel Dickman, M.D., does little more than track the declarations of counsel that are themselves deficient.  *See* Dkt. No. 1-3 ¶ 6.  Dr. Dickman states that he reviewed the "[m]edical records of Salvador Alfredo Moncada Hernandez," but this appears to refer to the three pages of cursory notes that were submitted to the Court, which do not identify any conditions known to be COVID-19 risk factors.  Dkt. No. 1-6 ¶ 3A.  Dr. Dickman also makes wholly conclusory and speculative statements such as, "Mr. Ahn is virtually certain to have coronary artery disease," without ever having examined Ahn or his medical records.  Dkt. No. 1-3 ¶ 13.

Overall, the evidence of petitioners' medical vulnerability, which is a lynchpin of their TRO and habeas arguments, is thin to the point of vanishing, even with a relaxed application of the rules of evidence.  The senior ages of Ahn and Saetern are not a basis in themselves for ordering release now.  It is true that individuals over the age of 60 are considered to be vulnerable and at increasing risk as age goes up.  But petitioners have not shown that the general conditions at the Mesa Verde facility unduly expose Ahn and Saeturn to infection.  Petitioners offer only one declaration by their counsel about the conditions at Mesa Verde, which was based on an "in-person visit to Mesa Verde [that] occurred on Friday, March 13, 2020," Dkt. No. 1-7.  That visit happened early in the response to the pandemic and undoubtedly does not reflect prevailing conditions when the declaration was filed almost a month after the visit.  Petitioners offer a number of general statements about infection issues at custodial institutions, all of which make important observations but are not tethered to the conditions these petitioners actually live in today.

In light of these merits considerations, the TRO should be denied.  The public interest factors of danger to the community and risk of flight also weigh against releasing petitioners.  *See*

*Winter*, 555 U.S. at 20.  Ahn was convicted of second degree murder; Moncada was convicted of attempted murder; and Saeturn was convicted of committing a lewd or lascivious act on a child under fourteen years and a subsequent failure to register as a sex offender.  Dkt. No. 7-1 at 10-15; Dkt. No. 15 at 3-6.  These are serious offenses that caused, or in Moncada's case threatened to cause, the gravest of injuries to their victims.  The Court has also been advised that on April 20, 2020, an Immigration Judge denied Moncada's request for release on bond, as the IJ found that the DHS "has met its burden to establish [Moncada] would pose a danger to the people or property of the United States" if released.  Dkt. No. 20 (Joint Notice of Related Immigration Judge Decision), Ex. A at 4.  Considered in the context of the entire record before the Court, the public interest factor additionally cuts against a finding that petitioners have met their burden of demonstrating that the "facts clearly favor" a mandatory injunction.  *Garcia*, 786 F.3d at 740.

## CONCLUSION

Taken as a whole, the record presently before the Court does not permit a TRO requiring immediate release of petitioners.  Petitioners' TRO motion, Dkt. No. 7, is denied without prejudice to renewal should circumstances warrant that.

**IT IS SO ORDERED.**

Dated:  May 4, 2020

_____
JAMES DONATO
United States District Judge